ISOM CARTER ET AL. v. EASTMAN-GARDNER COMPANY.

[48 South. 615.]

1. FRAUD. *Absence of presumption. Quantum of evidence.*

Fraud will not be presumed, but must be clearly proved.

2. SAME. *Exchange of lands. Ignorant negro overreached.*

The complainant being an ignorant and illiterate negro, an exchange of lands, made by him with the defendant, will be vacated where the difference in the value of the tracts was material and the trade was effected by the over-persuasion and unfairness of a white man, regarded and trusted by complainant as his friend, but who was employed and paid by the defendant to negotiate the trade.

FROM the chancery court of Simpson county.

HON. JAMES L. McCASKILL, Chancellor.

Carter and wife, appellants, were complainants in the court be-

low; the Eastman-Gardner Company, appellee, was defendant there. From a decree in defendant's favor the complainants appealed to the supreme court. The facts are stated in the opinion of the court.

*May, Flowers & Whitfield,* for appellants.

For a case in point as to what constitutes fraud in law, see *White v. Trotter,* 14 Smed. & M. 42, 43.

A contract, the making of which requires the exercise of discretion, made by one acting for both parties is voidable upon the application of either.

No man can serve two masters. All men being subject to the frailties of human nature, it is not only improper and inconsistent for one to attempt to look after the interest of the buyer and seller in a trade, and such conduct is clearly fraudulent. The deed is voidable upon principle of equity. *Insurance Co. v. Myers,* 55 Miss. 479; *Wildberger v. Insurance Co.,* 72 Miss. 338, 17 South. 282.

Following the opinion delivered by SIMRALL, C. J., in the case of *Planters' Insurance Co. v. Myers,* 55 Miss. 497, we say that the position of Runnells in the case at bar attempts a natural, logical and legal impossibility. It converts the agent of one into the agent of both. It places the agent in an inconsistent and antagonistic position. And in the concurring opinion of CHALMERS, J., in the above case he lays down the general proposition to be that a man cannot bind others by a contract between himself and his own agent.

Sullivan and Phillips paid Runnels the $50 for the purpose of effecting this deal for Carter's land; and at the same time trading with him and recognizing him to be the agent of Carter.

Credulous and ignorant as old Isom and his wife are admitted to be, any trade with them should have been a plain, straightforward and square deal. But what does the record show? It shows a trade teeming with misrepresentations and trickery from beginning to end, and that Isom was taken advantage of at every step.

Fraud then being the dominant scheme underlying this whole transaction, the misrepresentations are but the natural incidents thereto.

*Shannon & Street,* for appellee.

The questions involved are all questions of fact, found against appellants by the court below on disputed testimony, and the decree appealed from should be affirmed.

The counsel for appellants have cited no case which sustains their contentions.

The case of *White v. Trotter,* 14 Smed. & M. 30, is a case against the agent himself. Trotter was the agent of both the debtor and creditor at an execution sale and bought, in his own name, the property sold, and did not pay the creditor the amount of her debt. She filed a bill to cancel the sale made to the agent and to subject the property to the payment of her debt. There is not a single feature in that case even similar to the case at bar.

Nor is the case of *Insurance Co. v. Myers,* 55 Miss. 479, in point. A clause in the policy of fire insurance in that case attempted to make the insurance agent, who solicited the business, the agent of the insured, under all circumstances, and not the agent of the company. The court held that such a stipulation could not convert the agent who procured the application and made the contract of insurance on behalf of the company into an agent of the assured.

The reference to *Wildberger v. Insurance Co.,* 72 Miss. 338, made by counsel, was, we think, unfortunate for them. In the first place the case is totally unlike the case at bar, it being a case where Wildberger was the agent of the insurance company and also receiver of a stock of goods. In this capacity, he, as agent of the insurance company, issued to himself, as receiver, a policy of insurance, on the stock of goods, and before the company ever ratified the contract of insurance, or knew of it, the goods were destroyed by fire. The company refused payment

and suit was brought against it by Wildberger himself, the identical party who acted in the dual capacity. The court held that he could not recover. But there is no sort of similarity between that case and the case at bar. Here, Runnells, the alleged agent of both parties, is only a "middle man," and is in no sense a party to this suit.

Argued orally by *Geo. W. May,* for appellant.

MAYES, J., delivered the opinion of the court.

The original bill was filed on February 6, 1906, within a few months after the complainants deeded to Eastman-Gardner Co. the one hundred sixty acres of land in question, and about six years after the deed conveying the timber on same. Both deeds are sought to be canceled as fraudulent. As the consideration for the deed to the land to Eastman-Gardner Co. by Isom Carter and wife, which deed was made on November 1, 1905, Eastman-Gardner Co. conveyed to appellants another tract of land containing only one hundred acres. The consideration paid by Eastman-Gardner Co. for the timber on the same land was a cash consideration of $300, and the deed gave fifteen years in which to remove the timber. This last deed mentioned was the first deed executed, and was made some time in 1899. As to that part of the bill which seeks to cancel the timber right on the ground that the real contract was for seven years, and that the insertion of fifteen years was fraudulently done, it is only necessary to say that the proof fails to establish that charge in the bill. While it may be conceded that there are many suspicious circumstances surrounding the transaction, yet fraud is not to be presumed, but must be clearly proven, and it is our judgment that the evidence offered as to this fails to measure up to the degree of conclusiveness required by the law. As to this charge in the bill all relief should be denied.

As to that feature of the bill which seeks to cancel the conveyance made by the deed of November 1, 1905, we think it

clear that this should be done.   In the first place, the facts con-
clusively show that appellants were not only illiterate and ig-
norant, but very reluctant to make the conveyance, yielding only
when overpersuaded by one whom they trusted, and who was
then in the employ of Eastman-Gardner Co., even if it be con-
ceded that no threats were made which influenced them against
their will.   When the true situation of the parties is thoroughly
understood, the evidence of unfair, if not fraudulent, dealing is
made manifest from an inspection of the deeds themselves, and
this, coupled with other proof in the case, abundantly warrants
the court in setting aside the transaction.   It is shown that ap-
pellants owned one hundred sixty acres of land, of the value of
$1,120, exclusive of the timber already sold to Eastman-Gardner
Co.   They were induced in some way to exchange this land with
Eastman-Gardner Co. for a tract containing only one hundred
acres of land, of the value of $800, exclusive of the timber;
Eastman-Gardner Co. retaining all the timber thereon.   By this
transaction they are shown to have lost in quantity of land sixty
acres, amounting in dollars and cents to $320.   The tract of
one hundred acres is still further reduced in value by the fact
that Eastman-Gardner Co. retain the right to allow the timber
to stand on this one hundred acres of land for twenty-five years.
The rights reserved in the land by Eastman-Gardner Co. do not
stop here; but in addition to the above they reserve the right to
all oil, coal, and mineral rights.   In addition to this, Eastman-
Gardner Co. further reserve the right to construct, maintain,
and use the one hundred acres of land conveyed by them for
logging railways and tram or dirt roads until the timber is re-
moved, to wit, for twenty-five years.   In short, though East-
man-Gardner Co. obtain the fee-simple title to a tract of land
without right or reservation of any kind left in the grantors,
giving in exchange therefor land of far less value, they so re-
duce the value of the land conveyed as the consideration therefor
as to render their conveyance a mythical, valueless, unmarket-
able thing.

It is charged in the bill, and there is some evidence to support the charge, that the confidential friend and adviser of the appellants was their white neighbor, Runnells; that Runnells had been employed and paid by Eastman-Gardner Co. the sum of $50 to induce appellants to make the transfer. It is indisputable that Runnells was in the employ of Eastman-Gardner Co. at the time this deed was procured from Isom Carter, and that he was the confidential and trusted friend of these appellants, and that Eastman-Gardner Co. did pay him $50 for some transaction, though Eastman-Gardner Co. deny that it was for the purpose of obtaining Runnells to procure appellants to sign the deed. Be this as it may, this whole transaction is so manifestly unfair and unjust, made between parties standing upon such an unequal footing, showing so clearly that appellants have been overreached, that it must be set aside. The true purpose of the court would be lost sight of if so palpable a wrong could be allowed to go uncorrected.

The court below is directed to enter a decree requiring appellants to execute a conveyance to Eastman-Gardner Co. of the one hundred acres of land, and should then direct a cancellation of the deed made by appellants to Eastman-Gardner Co., revesting the title to the one hundred sixty acres of land in appellants.

*Reversed and remanded.*