CO-OPERATIVE OIL Co. *v.* GREENWOOD AGENCY Co. *et al.**

(Division B.    Oct. 31, 1927.    Suggestion of Error Overruled Nov. 28, 1927.)

[114 So. 397, 398.    No. 26634.]

1. PLEADING. *Pleading should be taken most strongly against pleader.*
   A pleading should be taken most strongly against pleader.
2. MORTGAGES. *Bill to enjoin mortgage foreclosure, alleging that on an accounting it would be shown that mortgagee had funds belonging to mortgagor, held not to make case for cancellation of mortgage because of fraud in its procurement.*
   Bill to enjoin foreclosure of mortgage, alleging that on an accounting between the parties it would be shown that mortgagee had in its possession belonging to mortgagor certain funds which would extinguish mortgage indebtedness, *held* not to make case for cancellation of mortgage because of fraud in its procurement, since bill did not charge that mortgage was brought about by fraudulent acts, and it should be presumed that mortgagee had

funds in its custody belonging to mortgagor as result of mere errors arising out of dealings between parties, in absence of specific charge that mortgagee acquired, and had possession, of such funds as result of fraud.

3. FRAUD. *Fraud must be specifically alleged.*

Fraud is never presumed, and must be directly and specifically charged and clearly proven.

4. MORTGAGES. *Sale under power given in mortgage could not be enjoined to enable mortgagor to set up counterclaim, where mortgagor did not show that irreparable injury would probably result otherwise.*

Foreclosure of mortgage through advertisement and sale by trustee under power in mortgage could not be enjoined until an accounting could be had between parties for purpose of ascertaining whether or not mortgagor had counterclaim against mortgagee, arising out of separate and distinct transaction from that out of which mortgage indebtedness arose, where bill did not aver that mortgagee was insolvent, or that it was nonresident, or any other ground showing that denial of injunction would probably result in irreparable injury to mortgagor.

*Corpus Juris-Cyc. References: Fraud, 27CJ, p. 28, n. 50; p. 44, n. 57; p. 63, n. 89; Injunctions, 32CJ, p. 93, n. 69; p. 106, n. 32; p. 107, n. 34. Mortgages, 41CJ, p. 930, n. 13; p. 935, n. 12; Pleading, 31Cyc, p. 78, n. 95. On common law rule that pleadings are construed strongly against pleader, see 21 R. C. L. 464; 3 R. C. L. Supp. 1158; 5 R. C. L. Supp. 1160; 6 R. C. L. Supp. 1268. On the question as to degree of certainty necessary to establish fraud in civil action, see annotation in 33 L. R. A. (N. S.) 836; 12 R. C. L. 424; 2 R. C. L. Supp. 1427; 5 R. C. L. Supp. 644; 6 R. C. L. Supp. 707. On right to injunction against sale under power in mortgage, see annotation in 35 L. R. A. (N. S.) 912; 19 R. C. L. 617.

APPEAL from chancery court of Leflore county.

HON. HARVEY MCGEHEE, Chancellor.

Suit by the Co-operative Oil Company against the Greenwood Agency Company, and others, for an injunction. Temporary injunction was issued, and from an order dissolving it, complainant appeals. Affirmed and remanded.

*S. L. Gwin* and *S. Rosenthal,* for appellant.

A court of equity may by injunction restrain the prosecution of an action for the foreclosure of a mortgage on the ground of fraud or duress, in the inception of the mortgage. 27 Cyc. 1538; Jones on Mortgages (7 Ed.), sections 1804, 1807. *Alcorn* v. *Alcorn,* 76 Miss. 907, aptly states the rule governing the dissolving of an injunction on motion before full proof and final hearing on the merits. The statement of Judge WHITFIELD is peculiarly applicable here particularly in that the entire bill is predicated upon allegations of fraud on the part of the defendants. See also Chancellor Griffith's excellent work on Mississippi Chancery Practice, section 456, and also *Irwin* v. *Lewis,* 50 Miss. 363; *Harleston* v. *West La. Bank,* 129 Miss. 111, 91 So. 423; *Swearingen* v. *Steers,* 49 W. Va. 312, 38 S. E. 510.

Although for the purposes of this hearing it is admitted that the defendant agency company is indebted to complainant in a sum equal to or greater than the amount of the indebtedness secured by the deed of trust sought to be foreclosed, the defendants contend that the injunction ought to be dissolved because an accounting is necessary to show the indebtedness of the defendant to complainant. While an accounting is necessary to reveal the major portion of the indebtedness to the complainant, nevertheless, as stated in the bill, complainant has ascertained and discovered sufficient funds in the hands of the defendant agency company belonging to the complainant to state an account greater than the amount of the indebtedness secured by the deed of trust, but even though it was necessary for an accounting to establish the indebtedness of defendants to complainant, nevertheless, this injunction should not be dissolved. *Evans* v. *Hoye,* 101 Miss. 244; *Aust* v. *Rosenbaum,* 74 Miss. 893; *Purvis* v. *Woodward,* 78 Miss. 929; *Peebles* v. *Yates,* 40 So. 996; *Nestor* v. *Davis,* 56 So. 347; *Spinks* v. *Jordan,* 66 So. 405; *Smith* v. *Werkheiser et al.* (Mich.), 115 N. W. 964, 15 L. R. A. (N. S.) 1092.

Where a promissory note is secured by fraud, equity will cancel the note. The prayer in the bill of complainant in this cause asked that the notes and deed of trust be canceled. *Crawford* v. *Mobile, etc., R. R. Co.,* 83 Miss. 708, 36 So. 82, 102 A. S. R. 476.

Certainly, if equity has the right to cancel the notes and deed of trust in controversy, it will have the right to enjoin the foreclosure of the deed of trust given as security for said notes, until the trial of said cause on its merits to determine whether or not the court will decree the cancellation of the notes and deed of trust.

The claim of appellants in this cause is not based upon a mere mutual indebtedness and is not in fact a set-off, but the indebtedness due appellants by the appellees consists of funds belonging to the appellant in the hands of the appellee, Greenwood Agency Company, received and retained by it as a depository of the appellant corporation funds so designated and constituted by the defendant, W. S. Barry, as the managing officer of appellant corporation.

We submit that the motion to dissolve should have been overruled and the injunction maintained until final hearing on its merits.

*Alfred Stoner* and *Pollard & Hamner,* for appellees.

Will equity enjoin a perfectly *solvent* mortgagee from foreclosing a deed of trust until an accounting can be had for the purpose of ascertaining whether or not the mortgagor has a counterclaim against the mortgagee, when such alleged counterclaim is alleged to have arisen out of an entirely separate and distinct transaction? Our answer is, no.

Necessarily, the agreement between counsel relegates the entire argument back to one question: Should the injunction have been granted in the first place?

Counsel have a great deal to say with reference to charges of fraud contained in the bill. We have examined

the bill carefully and nowhere is it alleged that Mr. Barry or any of the corporations in which he was interested was guilty of fraud. We might consider for the sake of argument, however, that the bill charged the grossest fraud on the part of Mr. Barry and still the complainant would not be able to find one authority to substantiate its contention that an injunction will issue against a perfectly solvent mortgagee so that a debt can be set-off against another debt which arose through fraud, out of an entirely distinct transaction.

All of the authorities make a clear distinction between set-offs arising out of another transaction. All of the cases that we have found hold that a solvent mortgagee, who is not a nonresident, will not be enjoined from foreclosing for the purpose of having an accounting of a matter growing out of another transaction.

The sale of the gin could not possibly have been connected with the set-off alleged in the bill of complaint. 19 R. C. L., pages 617, 618; 28 Am. & Eng. Ency. of Law (2 Ed.), 810; 3 Jones on Mortgages (7 Ed.), sec. 1811; *Caldwell* v. *Caldwell* (Ala.), 52 So. 323; 28 Am. & Eng. Ency. of Law (2 Ed.), page 838; 32 C. J. 93, sections 84, 115.

The court will observe from the last cited authority that equity will usually refuse to enjoin even an action at law for the purpose of interposing an equitable defense, unless it is alleged that the plaintiff at law is insolvent. We submit that the authorities above cited point out the fact that a deed of trust is of by far greater dignity than an action at law. The courts even go so far as to say that the mortgagor should consider when he executes the deed of trust whether he is giving too much power to the mortgagee.

Counsel also argue that an injunction will be issued and upheld in cases where it is impossible to ascertain the amount of the indebtedness. It is very evident that counsel are confused in this and have failed to apprehend the meaning of the cases. We are anxious that

the court get this distinction clearly in mind: If the confusion as to the amount of the indebtedness arises from within the particular transaction itself, then equity will enjoin a foreclosure of a deed of trust until the correct amount can be ascertained, but not otherwise. In the case at bar it is necessary that an accounting be had in order to ascertain the amount due by Mr. Barry to the Co-operative Oil Company.

Counsel also argue that in cases of this kind the matter of retaining or dissolving an injunction is a matter of discretion. Counsel are mistaken, in that we construe the authorities to hold that the injunction should not have been issued in the first place. However, if counsel are correct in their contention that its retention is a matter of discretion, then we say that the chancellor has exercised that discretion adverse to appellants. The only Mississippi case that we consider in point is *Perkins* v. *Coleman,* 51 Miss. 298. There the court was eminently correct in making an exception to the rule, because irreparable and irremediable injury would have resulted, and great injustice would have been done. We also call the especial attention of this court to the notes annotating the case of *Ekeberg* v. *Mackay,* 35 L. R. S. (N. S.) at page 912. See, also, *Tate* v. *Evans,* 54 Ala. 16. Other authorities to the same effect are shown at page 912, 35 L. R. A. (N. S.), *supra,* wherein quotations are made from Georgia, North Carolina, Missouri, Virginia and Rhode Island courts.

We submit further that the authorities all hold that in cases of this character an injunction will not issue unless it is necessary to do justice between the parties. The defendants, being solvent, it is certainly not necessary to retain the injunction in order to do justice; but on the other hand, the injunction will do a great injustice, and this fact was evidently in the mind of the chancellor when he dissolved the injunction.

Argued orally by *S. Rosenthal,* for appellant, and *Alfred Stoner,* for appellees.

Anderson, J., delivered the opinion of the court.

Appellant, a corporation, filed its bill in the chancery court of Leflore county, against appellee Greenwood Agency Company, a corporation, and others, to enjoin the appellees from foreclosing, *in pais,* a mortgage which had, theretofore, been executed to secure an indebtedness due by it to appellee Greenwood Agency Company, upon the ground that, on an accounting between the parties, it would be shown that appellee the Greenwood Agency Company had in its possession, belonging to appellant, certain funds, which would extinguish the mortgage indebtedness.

The case was heard on original bill, demurrer thereto, and motion by appellee to dissolve the temporary injunction, which had been issued restraining the foreclosure of the mortgage. The motion to dissolve the injunction was sustained, and appellant was granted an appeal to settle the principles, of the cause.

There is such a sharp controversy between the parties as to whether the bill sufficiently charges that the mortgage in question was procured by fraud on the part of the mortgagee, that we deem it best to set out the bill in full (except the formal parts), which follows:

"The Co-operative Oil Company was promoted by W. S. Barry through certain of his agents, during the year 1915, and organized on August 18, 1915, with a capital stock of six hundred shares on the par value of one hundred dollars per share, of which W. S. Barry subscribed for thirty shares, for the purpose of purchasing and operating the cotton seed oil mill located at Moorhead, in Sunflower county, Miss., which had been idle for some time, and which was then owned by, and standing in the name of, the Moorhead Oil Company, a Mississippi corporation, of Moorhead, Miss. W. S. Barry owned

ninety-one shares of the total of five hundred thirty-three shares outstanding of the capital stock of the Moorhead Oil Company, and was and had been for many years the president of the corporation, and practically in entire charge and control of the corporation. No meeting of the directors or stockholders of the corporation, having occurred for about six years prior to May 11, 1915, when the sale of the plant was authorized. The Moorhead Oil Company was largely indebted to the Planters' Oil Mill & Manufacturing Company, and the terms of the sale contemplated that the subscribers to the capital stock of the Co-operative Oil Company would execute their notes for such stock and deliver the same to the Planters' Oil Mill & Manufacturing Company.

"(2) The Planters' Oil Mill & Manufacturing Company had, prior to November 10, 1914, owned and operated an oil mill plant at Greenwood, Miss., but said plant was on that date totally destroyed by fire, and, this being the only oil mill owned or operated by it, its oil mill business and operations were discontinued, and the corporation creased to be a going concern for the purpose of its incorporation. At the time of this fire W. S. Barry owned one hundred seventy-five shares of the total outstanding three hundred ninety-one shares of the par value of one hundred dollars per share, of the capital stock of the Planters' Oil Mill & Manufacturing Company, and on or about May 8, 1916, he acquired one hundred seventeen additional shares, and became the owner of two hundred ninety-two shares of the three hundred ninety-one shares outstanding. On June 17, 1916, he and the heirs of T. S. Mayre, to-wit, Mrs. M. E. Mayre and W. S. Mayre, who owned the other ninety-nine shares of said stock, which was, and had been, for many years practically controlled by the said W. S. Barry, together with the corporation acting through them as the only stockholders, executed a deed whereby they transferred to G. W. Covington, J. H. Perry, and J. H. Pettey, the real estate upon which the oil mill had formerly been

located, and the entire capital stock, franchise, and char-
ter of the corporation, attempting to reserve unto W.
S. Barry and W. S. Mayre, as individuals, certain real
estate, not connected with the former oil mill plant, and
all of the bills and accounts receivable then owned by the
corporation. W. S. Barry was the president and execu-
tive manager actively in charge of the Planters' Oil Mill
& Manufacturing Company, and practically in entire and
exclusive charge and control of the corporation, its prop-
erty and assets, frequently and whenever desired by him
employing the corporate name in the transaction of his
individual business, and his individual name in the trans-
action of the corporate business, for many years prior
to June 17, 1916, including the whole of the year 1915,
and the year 1916, up to June 17, 1916.

"(3)   In 1915 W. S. Barry promoted and organized
the Greenwood Agency Company, a Mississippi corpora-
tion domiciled at Greenwood, in Leflore county, Miss.,
and under that name has been since that time doing an
insurance agency and real estate agency business, owning
all except a few qualifying shares of the capital stock of
said corporation, and being at all times since its organi-
zation in the control and management of and directing its
business and affairs, frequently transacting his individ-
ual business, and holding his individual property and
funds in the name of said corporation and receiving the
profits of said business.

"(4)   At the organization of the Co-operative Oil
Company, on August 18, 1915, W. S. Barry was elected
president and general manager and superintendent, and
W. M. Carter, who had been for a number of years an
employee of W. S. Barry, or one of the aforesaid oil mill
companies, then controlled by him, as hereinbefore set
out, was elected secretary of the corporation, and the
said W. S. Barry and the said W. M. Carter, who was
under his control and direction, had practically the en-
tire charge, custody, and control of the corporation, its
property and assets, and its business affairs and funds,

from the organization thereof until the latter part of July, 1919, when W. S. Barry ceased to be a stockholder of the corporation, and his successor as president was elected, and W. M. Carter resigned as secretary, and there was an entire change of management of the corporation, and the corporate business and affairs, the new management not then being familiar with, or having knowledge of, the transaction herein complained of. Under the by-laws of the Co-operative Oil Company, adopted at the organization on August 18, 1915, the president was intrusted with large powers and authorities, including a supervisory position over the affairs of the company and its employees, and the power to direct the general policy of the company, and he was designated as the organ of the company through whom all official communications should pass. It was made the duty of the president to visit purchasers and sellers of cotton seed other than stockholders of the corporation, called independent seed, and seed agents and shippers, and to keep informed of the policy and business and prices paid for cotton seed by other buyers of cotton seed, in the territory from which the Co-operative Oil Company expected to draw its supply of cotton seed for manufacture, and he was intrusted with the power, and imposed with the duty and responsibility, of regulating and changing the prices to be paid for such independent seed to be purchased by the Co-operative Oil Company in such way, and at such times, as he and the general manager, which office was also held by W. S. Barry, might agree to be to the best interests of the Co-operative Oil Company, and it was made the duty of the general manager and superintendent, both of which offices were held by W. S. Barry, to advise with the president, and agree on the price to be offered or paid for such independent cotton seed, and to take charge of all cotton seed, see that the same was properly taken care of and manufactured and prepared for market, and the product sold to the best interests of the corporation. On September 9, 1915, at

a meeting of the board of directors of the Co-operative Oil Company, the said W. S. Barry was authorized to borrow from the Planters' Oil Mill & Manufacturing Company thirty thousand dollars for the purpose of paying for cotton seed and advancing money to cotton seed shippers.

"(5)    W. S. Barry, having control of all of the said corporations, and directing their affairs, had the Planters' Oil Mill & Manufacturing Company bring suit in the circuit court of Sunflower county, Miss., against the Moorhead Oil Company, for ninety-five thousand dollars, alleging in its declaration that this was the indebtedness of the Moorhead Oil Company to the Planters' Oil Mill & Manufacturing Company, for one hundred thirty thousand eight hundred ninety-four dollars and thirteen cents, and execution issued under this judgment was levied upon the entire plant of the Moorhead Oil Company, including the gin property owned by it, and used in connection with the oil mill, hereinafter more particularly described, and the whole of said property so levied upon was sold by the sheriff of Sunflower county, Miss., and purchased for the sum of eight thousand dollars by the Greenwood Agency Company, which conveyed the oil mill and the land upon which it was located to the Co-operative Oil Company for the consideration of one dollar and other valuable considerations, the other valuable considerations being the agreement as to the terms of sale hereinbefore set forth, the Greenwood Agency Company retaining the ownership of the gin property above mentioned.

"(6)    At or about the date of the organization of the Co-operative Oil Company in August, 1915, it was by the said W. S. Barry put into the possession of the said oil mill property at Moorhead as the owner thereof, and commenced the operation of said oil mill plant as a cotton seed oil mill with the said W. S. Barry as president, general manager, and superintendent, and the said W. M.

Carter as secretary, in charge thereof, as hereinbefore set forth.

" (7) There appears on the books of the Co-operative Oil Company, which were kept by the secretary under the directions and instructions of W. S. Barry, beginning September 1, 1915, and ending September 9, 1916, an account by the Co-oprative Oil Company from time to actions shown by this account were, as your complainant is informed and believes, and so charges, conducted by W. S. Barry as the president and executive manager of all of the corporations which are parties to this suit, and ultimately inured to the benefit of the said W. S. Barry, and said account, in whole or in part, is, in reality, the account of the Greenwood Agency Company, or W. S. Barry, individually, or both, and such transactions were, in fact, in whole or in part, actually between the Co-operative Oil Company under the direction of W. S. Barry and the Greenwood Agency for the use of W. S. Barry. Advances of money were received and credited under this account by the Co-operative Oil Company from time to time during the months of September and October, 1915, to the aggregate sum of thirty-six thousand one hundred seventy-three dollars and eighty-two cents, of which thirty-five thousand nine hundred ninety-nine dollars and forty cents was repaid by the Co-operative Oil Company, and charged on this account in September, October, and November, 1915, up to November 16, 1915. Thereafter, during the aforesaid period, advances of money were received and credited under this account by the Co-operative Oil Company, in the sum of five thousand dollars, on January 10, 1916, all of which were repaid on or before January 28, 1916, by the Co-operative Oil Company, which on that date deposited with the ——— on said account against the beneficiary or beneficiaries of said account through the medium of drafts drawn in favor of the Planters' Oil Mill & Manufacturing Company, or the Planters' Oil Mill, or cash, the further sum of eleven thousand four hundred twenty-four dollars and fifty-

seven cents, and on February 4, 1916, the further sum of fifteen thousand dollars; on February 11, 1916, the further sum of fifteen thousand dollars; and on April 3, 1916, the further sum of ten thousand dollars; and on May 20, 1916, the further sum of two thousand three hundred thirty-three dollars and thirty-six cents; and on May 24, 1916, the further sum of ten thousand dollars; and on same date the further sum of fifteen thousand dollars; and on August 25, 1916, the further sum of ten thousand dollars; and received back in drafts drawn in favor of the Co-operative Oil Company, and credited on said account on June 12, 1916, five thousand dollars; on July 10, 1916, five thousand dollars; on September 5, 1916, five thousand dollars; and on September 9, 1916, ten thousand dollars. There appears also on this account as credits to the Planters' Oil Mill, four items, to-wit, T. H. Edmondson stock, one thousand dollars; interest one thousand two hundred sixty-five dollars; W. R. Page, five hundred thirty-one dollars and ten cents; R. D. McLean, one thousand seventy-three dollars and thirty-five cents, all aggregating three thousand six hundred four dollars and forty-five cents, which said items, as your said complainant is informed and believes, and so charges, are not proper credits to this account, or to any account on the books of the Co-operative Oil Company. The item of interest, one thousand two hundred sixty-five dollars, is wholly incorrect, since, by reason of the deposits and advances made by the Co-operative Oil Company, with or to the beneficiary or beneficiaries of this account under this account, the Co-operative Oil Company would be, and is, entitled to a large amount of interest on the account, rather than obligated to pay interest thereon. The remainder of the credits to the Planters' Oil Mill on this account relate to purchases by the Co-operative Oil Company of independent cotton seed, that is to say, cotton seed sold, shipped, and delivered to the Co-operative Oil Company during said period, by producers and sellers other than stockholders

of the corporation, all of which were shipped to the Co-operative Oil Company by rail. The Planters' Oil Mill is credited on this account on the various dates of the receipt thereof by said company from September 16, 1915, to December 6, 1915, with the purchase price of twenty-eight cars of cotton seed so sold and delivered to the Co-operative Oil Company by various independent shippers of cotton seed, and not by the Planters' Oil Mill, nor the Planters' Oil Mill & Manufacturing Company, nor any of the parties to this suit, aggregating eight hundred forty-five tons at twenty dollars per ton, amounting to sixteen thousand nine hundred dollars. Your complainant is not advised just how the sellers of these cotton seed received payment of the purchase price therefor, but they are informed and believe, and so charge, that the same were carried through this account in order that the profit thereon, to which this complainant was and is entitled, might inure to the benefit of W. S. Barry, individually, or through the Planters' Oil Mill & Manufacturing Company, or the Greenwood Agency Company, ultimately to W. S. Barry, and that there was made by the Co-operative Oil Company a large profit on said cotton seed and all other cotton seed handled by said company during said period, and that the profit on said cotton seed, and on a large amount of other cotton seed, was paid by the Co-operative Oil Company to, and received by W. S. Barry, individually, or through the Planters' Oil Mill & Manufacturing Company, or the Greenwood Agency Company, and was ultimately received by W. S. Barry, in that, on May 15, 1916, this account was credited with the proceeds of one thousand three hundred seventy and sixty-five hundredths tons of such independent cotton seed, at twenty dollars per ton, amounting to twenty-seven thousand three hundred eighty dollars and ninety-nine cents, and on May 20, 1916, was further credited with an arbitrary additional amount of thirty-nine thousand eight hundred eighty-eight dollars and ninety cents, being eighteen dollars per

ton on two thousand two hundred sixteen and five hundredths tons of cotton seed, representing the whole of the independent cotton seed purchased by the Co-operative Oil Company, during said season of 1915-1916, a large amount of which said sums of money was. the profit made by, and which should have inured to, the Co-operative Oil Company in the handling and manufacture of said cotton seed, the exact amount being to your complainant unknown, and resting peculiarly within the knowledge of the defendants W. S. Barry and the Green-wood Agency Company, which profit inured to the benefit of W. S. Barry, and was paid to him directly or at his direction to the Greenwood Agency Company, and in either or any event was ultimately received by the said W. S. Barry.

"After W. S. Barry had, by reason of the sale of the capital stock of the Planters' Oil Mill & Manufacturing Company as hereinbefore set forth, terminated his connection with and control of that company and was no longer able to employ the name of the Planters' Oil Mill in connection with the aforesaid account with the Co-operative Oil Company, said account in the name of the Planters' Oil Mill was closed on September 9, 1916, and on the same date reopened on the books of the Co-operative Oil Company in the name of the Greenwood Agency Company, to which latter name the aforesaid account was, by the direction and instruments of W. S. Barry, transferred on the books of the Co-operative Oil Company, and, notwithstanding that the Co-operative Oil Company had before that time paid on said account, and deposited as hereinbefore set forth with the beneficiary thereof, more than was due or owing from the Co-operative Oil Company, or for which the Co-operative Oil Company was liable, and said account should have shown a large balance in favor of the Co-operative Oil Company, yet, by reason of the erroneous credits to the name of the Planters' Oil Mill on said account made upon the instructions and under the direction of the said

W. S. Barry as hereinbefore set forth, there was indicated and shown on said account on said date a balance to the credit of and favor of the Planters' Oil Mill as due and owing by the Co-operative Oil Company to the Planters' Oil Mill in the sum of twenty-four thousand two hundred ninety-nine dollars and forty-one cents, which said balance so made to appear was, by the said W. S. Barry, or under his direction, transferred on the books of the Co-operative Oil Company from the said account standing in the name of the Planters' Oil Mill to the said account as reopened in the name of the Greenwood Agency Company, and shown on said account as so reopened in the name of the Greenwood Agency Company as an indebtedness of the Co-operative Oil Company to the Greenwood Agency Company, and the Greenwood Agency Company afterwards applied the funds of the Co-operative Oil Company deposited with and in the custody of the Greenwood Agency Company to the payment of the aforesaid balance of twenty-four thousand two hundred ninety-nine dollars and forty-one cents and interest thereon, which ultimately inured to the benefit of, and was received by W. S. Barry.

"(8)   From the reopening of said account in the name of the Greenwood Agency Company with the aforesaid credit in its favor of twenty-four thousand two hundred ninety-nine dollars and forty-one cents, as hereinbefore set forth, on September 9, 1916, to July, 1919, when W. S. Barry terminated his connection with the Co-operative Oil Company, which said account, as the complainant is informed and believes and so charges, was for the use of W. S. Barry, and inured to his benefit, the Greenwood Agency Company, having been constituted by W. S. Barry, without authority of the Co-operative Oil Company, as the depository of the funds of the Co-operative Oil Company, acted as such from time to time, receiving such deposits from and making advances on notes and open account to the Co-operative Oil Company, such deposits and payments on account made by the Co-opera-

tive Oil Company with and to the Greenwood Agency Company during said period amounting to considerably more than three hundred thousand dollars.

"The Greenwood Agency Company, as the agent of various insurance companies writing various classes of insurance, wrote all of the insurance of every kind taken out by W. S. Barry for the Co-operative Oil Company and charged the premiums theron to the Co-operative Oil Company, and applied the funds of the Co-operative Oil Company in the hands of the Greenwood Agency Company to the payment of such premiums, including the regular insurance agents' commissions which were retained by the Greenwood Agency Company. There are a large number of items of insurance premiums, reductions, return premiums, and credits and debits, some of which are erroneous, and the premiums so collected by the Greenwood Agency Company amount to many thousand dollars.

"In the latter part of the year 1920 the management of the Co-operative Oil Company, which succeeded W. S. Barry in the management thereof, had an audit made of its books, and through such audit for the first time received the information, which up to that time had not been disclosed to it, that the Greenwood Agency Company had not properly accounted for and paid over to the Co-operative Oil Company all of the funds deposited by the Co-operative Oil Company with the Greenwood Agency Company as hereinbefore set forth, but that there was due to the Co-operative Oil Company from the Greenwood Agency Company on the aforesaid account, as shown by the records and canceled drafts of the Co-operative Oil Company, in the sum of seven thousand five hundred eighty-nine dollars and fifty-seven cents. The said account as it appears on the books of the Co-operative Oil Company is incomplete and incorrect, omitting many important items of credit in favor of the Co-operative Oil Company and many transactions which should inure to the benefit of the Co-operative Oil Com-

pany, and containing many substantial credits in favor of the Greenwood Agency Company and charges against the Co-operative Oil Company, including the time of credit in favor of the Greenwood Agency Company in the sum of twenty-four thousand two hundred ninety-nine dollars and forty-one cents of September 9, 1916, transferred from the account of the Planters' Oil Mill as hereinbefore set forth, which were erroneously entered, and the amount now actually due and owing to the Co-operative Oil Company from the Greenwood Agency Company is greatly in excess of the aforesaid sum, and your complainant is informed, and so charges, that such amount is in excess of thirty thousand dollars. The auditors who made such audit while engaged therein, with the authority of the Co-operative Oil Company, several times requested of the Greenwood Agency Company a statement of the aforesaid account as the same appeared upon the books of the Greenwood Agency Company, but that company failed and refused to furnish such statement. The Greenwood Agency Company has very recently delivered to the Co-operative Oil Company a statement of account purporting to be a statement of the aforesaid account as the same appears on the books of the Greenwood Agency Company which shows that the Greenwood Agency Company now has in its hands funds of the Co-operative Oil Company amounting to five thousand six hundred sixty-four dollars and eighty-nine cents, but which does not accord with the accounts as it was by W. S. Barry made to appear on the books of the Co-operative Oil Company, which omits many important credits in favor of the Co-operative Oil Company and transactions for the benefit of the Co-operative Oil Company, which should properly appear on a true statement of the account, and which is not a true statement of the account nor of the amount due and owing from the Greenwood Agency Company to the Co-operative Oil Company, but is incomplete and erroneous, and the amount now actually due and owing from the Greenwood Agency Company and W. S.

Barry to the Co-operative Oil Company is, as hereinbefore set forth, largely in excess of the amount shown by the aforesaid statement of the Greenwood Agency Company.

"During the period from September 9, 1916, to July, 1919, the purchases by the Co-operative Oil Company or by W. S. Barry or the Greenwood Agency Company for the Co-operative Oil Company, of independent cotton seed for manufacture by the Co-operative Oil Company, were conducted very much in the same manner as they had been under the name of the Planters' Oil Mill. None of these transactions were, however, made to appear on the books of the Co-operative Oil Company in connection with the account of the Greenwood Agency Company or W. S. Barry, nor do any of them appear on the aforesaid statement made by the Greenwood Agency Company.

"During the season of 1916-1917 shippers of independent cotton seed were credited on the books of the Co-operative Oil on accounts carried in the name of the respective independent shippers with the amount of seed received by it from them respectively at forty dollars per ton, and checks in payment for such seed were made by it payable to the respective shippers for the amount so shown on their respective accounts, and all of such checks were delivered by the secretary of the Co-operative Oil Company at the direction of W. S. Barry to the Greenwood Agency Company, which indorsed the same respectively with the name of the respective payee thereof, and collected the same and received the amounts thereof. At the end of that season an additional five dollars per ton was likewise credited to the account of such shippers of independent seed, and checks therefor similarly issued by the Co-operative Oil Company payable to them respectively, and were similarly delivered by the secretary of the Co-operative Oil Company at the direction of W. S. Barry, to the Greenwood Agency Company, and similarly indorsed by it with the names of the re-

spective payees, and similarly collected by the Greenwood Agency Company.

"During the season of 1917-1918, all shippers of independent cotton seed received by the Co-operative Oil Company were similarly credited on accounts carried on the books of said company in the individual names of such shippers respectively, with the purchase price of such cotton seed so received from them respectively, when received, and at the end of the season with an additional sum of five dollars per ton, and during said season from time to time checks were issued by the Co-operative Oil Company in their favor, respectively, for the amounts shown by such accounts to be due to them respectively, and all such checks were similarly delivered by the secretary of the Co-operative Oil Company at the direction of W. S. Barry to the Greenwood Agency Company, which similarly indorsed the same with the names of the respective payees thereof, and similarly collected the same.

"The amount so received during said seasons of 1916-1917 and 1917-1918 by the Greenwood Agency Company included a large amount of profit on such cotton seed from the purchase and manufacture thereof which should have inured to the benefit of the Co-operative Oil Company, but which in fact was received by the Greenwood Agency Company for the use, as your complainant is informed and believes and so charges, of W. S. Barry, who ultimately received the benefit thereof.

"The complainant does not know, and has no way of ascertaining at this time the amount of profit received by the Greenwood Agency Company and W. S. Barry on account of the aforesaid seed transactions, such information resting peculiarly within the knowledge of the said defendants, but the Co-operative Oil Company is entitled to such profit when disclosed; and, whether the same was received by the Greenwood Agency Company or W. S. Barry, or the Greenwood Agency Company for the use

and benefit of W. S. Barry, the Co-operative Oil Company is entitled to recover the same.

"(9)   On or about August 26, 1919, the Co-operative Oil Company purchased from the Greenwood Agency Company the property hereinbefore referred to as the gin property situated at Moorhead, in Sunflower county, Miss., and more particularly described as lots 1, 2, 3, 4, 5, and 6, in block 22, of the village of Moorhead, in said county and state, at and for the sum of nine thousand three hundred dollars, of which the Co-operative Oil Company then paid in cash the sum of one thousand dollars and for the remainder of eight thousand three hundred dollars executed its four certain promissory notes in favor of the Greenwood Agency Company, of that date, one for one thousand dollars due January 1, 1920, one for two thousand seven hundred sixty-six dollars and sixty-six cents, due January 1, 1921, and two each for two thousand seven hundred sixty-six dollars and sixty-seven cents, due January, 1922, and 1923, respectively, all bearing interest at the rate of six per cent. per annum from the date thereof, payable on January 1, 1920, and annually thereafter, and to secure the same executed its certain deed of trust dated August 28, 1919, on all of said property except lot 1, hereinbefore described, to R. V. Pollard as trustee for the use and benefit of the Greenwood Agency Company, which said deed of trust is recorded in Book Q5, at page 480, of the Record of Mortgages and Deeds of Trust on lands of Sunflower county, Miss., reference to which is hereby made as an exhibit hereto, and a copy of same will be filed herewith as such exhibit, which said deed of trust provides for the acceleration of the payment of all of said notes, at the option of the Greenwood Agency Company upon default in the payment by the Co-operative Oil Company or of any of said notes or of any taxes on said property covered thereby, and giving the Co-operative Oil Company the right to pay any one or more of said notes on the 1st day of any January prior to the maturity thereof.

The Co-operative Oil Company paid the note for one thousand dollars and the interest to January 1, 1920, on that date. When said deed of trust was executed and said payments were made thereon by the management of the Co-operative Oil Company which succeeded W. S. Barry in the management of said company, the Co-operative Oil Company were ignorant of the indebtedness of the Greenwood Agency Company or W. S. Barry to the Co-operative Oil Company, and did not discover such indebtedness until long after that time during the latter part of 1920, or the early part of 1921, since which time it has declined to pay said notes or any part thereof. The said notes, though standing in the name of the Greenwood Agency Company, are, in fact, owned by the defendant who is indebted to the Co-operative Oil Company as hereinbefore set forth, and the amount of such indebtedness is, and was at the execution of said notes and deed of trust, largely in excess of all of said notes and indebtedness of any kind secured by said deed of trust, and said indebtedness in favor of the Co-operative Oil Company has been, and should be, by this court set off against said notes as of the date thereof, and said notes declared paid at the execution thereof, and said notes and deed of trust should be canceled.

"(10)   The complainants show that the aforesaid accounts and transactions herein complained of are long, tedious, and complicated, and that, in order to determine the true amount due to it, and which it is entitled to recover from the defendants, a general accounting with the defendants covering the entire period of the connection of the Planters' Oil Mill & Manufacturing Company, if that company is intended to be designated in the account carried on the books of the Co-operative Oil Company in the name of the Planters' Oil Mill, of the Greenwood Agency Company and of W. S. Barry with the Co-operative Oil Company, and that the complainant has no adequate remedy of law for that purpose, but that the interposition of this court of equity is necessary to state

an account between the complainant and the defendants, showing the amount due to the complainant by them respectively.

"The premises considered, the complainant prays that summons issue to the defendants returnable to the next term of this honorable court; answer of the defendants under oath being hereby expressly waived; that an account may be decreed to be stated between the complainant and several defendants, and the amounts due to this complainant by the several defendants, respectively, may be determined and decreed by this court against them respectively in favor of the complainant; that all necessary commissioners and masters may be appointed; that the defendants, Greenwood Agency Company, W. S. Barry, and R. V. Pollard be enjoined and restrained from selling, or advertising for sale, or attempting to sell or advertise for sale, the property covered by the aforesaid deed of trust dated August 28, 1919, from the Co-operative Oil Company to R. V. Pollard as trustee for the Greenwood Agency Company; that, upon said accounting and the ascertainment of the amount due your complainant by the several defendants, respectively, such amount may be set off against the notes and indebtedness secured by said deed of trust as of the date thereof, to the amount of said notes and any indebtedness secured by said deed of trust; that said notes and deed of trust may thereupon be decreed to be canceled and surrendered to the complainant; and that a decree may be rendered in favor of complainant against the said defendants respectively liable to the complainant for the balance of their respective liability to the complainant, or your complainant prays for general relief."

Appellant contends that, by its bill, it made a case for the cancellation of the mortgage on account of fraud in its procurement on the part of the mortgagee. A pleading should be taken most strongly against the pleader. So viewing appellant's bill, we think it failed to sustain appellant's contention in that respect. Nowhere does

the bill charge, in the usual language, that the execution of the mortgage was brought about by fraudulent acts and representations on the part of the mortgagee. Fraud is never presumed. It must be directly and specifically charged and clearly proven. *Dunlap* v. *Fox* (Miss.), 2 So. 169; *Parkhurst* v. *McGraw*, 24 Miss. 134; *Carter* v. *Eastman-Gardner Co.*, 95 Miss. 651, 48 So. 615; and *Hall* v. *Thompson*, 1 Smedes & M. 443. For aught that appears in the bill to the contrary, the fact that appellee, the Greenwood Agency Company, had funds in its custody belonging to appellant sufficient to extinguish the mortgage indebtedness, could have been, and may have been, the result of mere errors and mistakes arising out of the dealings of the two corporations. That presumption should be indulged in, in the absence of a specific charge in the bill that the mortgagee acquired and had possession of such funds as the result of fraud on its part.

The other question for decision is whether a court of equity will enjoin a solvent mortgagee from foreclosing his mortgage through advertisement and sale by a trustee until an accounting can be had between the parties for the purpose of ascertaining whether or not the mortgagor has a counterclaim against the mortgagee, where such counterclaim has arisen out of a separate and distinct transaction from that out of which the mortgage indebtedness arose. The authorities appear to be quite unanimous in answering this question in the negative. They hold that a sale under the power given in a mortgage or deed of trust is a remedy at law, and will not be enjoined in order that the mortgagor may be enabled to set up a counterclaim against the mortgage indebtedness, unless the mortgagor shows some special, intervening equity in his favor, such as insolvency, or nonresidence, on the part of the mortgagee, or other ground, which, if denied, would probably result in irreparable injury to the mortgagor. 3 Jones on Mortgages (7 Ed.), section 1811; 19 R. C. L., p. 617; *Caldwell* v. *Caldwell*,

166 Ala. 406, 52 So. 323, 139 Am. St. Rep. 48; 32 C. J., sections 84 and 115, pp. 93 and 106. *Perkins* v. *Coleman,* 51 Miss. 298, although not directly decisive of this question, expressly recognizes the doctrine laid down in the authorities cited above.

We are of the opinion that the allegations of appellant's bill brings its case within that doctrine. There is no averment in the bill as to solvency of the mortgagee, or that it is a nonresident, or other ground to enjoin the foreclosure of the mortgage, which, if denied, would probably result in irreparable injury to the mortgagor.

*Affirmed and remanded.*