MULLINS & PARKER, et al. *v.* RUCKER.

No. 41222          October 12, 1959          114 So. 2d 761

November 16, 1959        115 So. 2d 535

*Laub, Adams, Forman & Truly,* Natchez, for appellants.

*Robert L. Netterville,* Natchez; *C. F. Cowart,* Meadville, for appellee.

Lee, J.

John E. Rucker, on June 17, 1954, while cutting pulpwood on the land of J. W. Sullivan in Franklin County for delivery to Mullins and Parker, partnership pulpwood dealers at Natchez, Mississippi, was struck by a falling tree with the result that both of his legs were badly broken. The injured man was sent immediately to a hospital; and the next day, Mullins and Parker made out and sent to both its insurer, United States Fidelity & Guaranty Company, and the Workmen's Compensation Commission, the employer's first report of industrial injury, in which they designated themselves as employer and Rucker as employee. Thereafter on July 2, 1954, Rucker, Mullins and Parker, and their insurer,

United States Fidelity and Guaranty Company, voluntarily signed an agreement for the payment of compensation at the rate of $25 per week during the continuance of the disability. This agreement was filed with and approved by the Commission. From June 18, 1954, to September 19, 1957, that is, for one hundred and seventy weeks, total payments of compensation aggregated $4,-250 and medical expenses $1,849.02. During that period, by the filing of numerous papers with the Commission and the acceptance of many reports from doctors, Mullins and Parker and their insurer recognized themselves as the employer of Rucker.

On September 5, 1957, the carrier filed with the Commission notice that it had terminated temporary total disability payments as of August 23, 1957, because maximum recovery had been reached. Thereupon the claimant filed his petition for a hearing and determination of his permanent disability, whether total or partial.

At the conclusion of the hearing, the attorney-referee was of the opinion that the claimant reached maximum recovery on August 24, 1957, and that the payment of $25 per week for one hundred and sixty-six weeks was for temporary total disability; and that the claimant was, at that time, on May 29, 1958, totally and permanently disabled. Consequently for such permanent and total disability, he awarded benefits at the rate of $25 per week from August 24, 1957, for a period of four hundred and fifty weeks or $8,600, whichever should be the lesser in amount, crediting $100 as previously paid thereon.

On appeal, the Commission held that the claimant, at all times since June 17, 1954, had been totally and permanently disabled. For that reason, it modified the award of the attorney-referee so as to require weekly payments of $25 from the date of the injury for a period of four hundred and fifty weeks, or until the amount of $8,600 has been paid, less the amount of $4,200 theretofore paid.

On both direct and cross-appeals, the circuit court affirmed; and the case has been brought here on direct appeal by the employer and its insurer and on cross-appeal by the claimant.

Notwithstanding Mullins and Parker and their insurer promptly, after the accident, in recognition of the existence of the employer-employee relationship between them, agreed to pay compensation, and thereafter did so for one hundred and seventy weeks, and notwithstanding many statements and acknowledgments in writing that such relationship subsisted, they now maintain on this appeal that such relationship did not exist, but that, on the contrary, it was one of vendor and vendee. To that end, evidence was introduced, which, they say, brings the case within the rule announced in Nelson v. Slay, 216 Miss. 640, 63 So. 2d 46, and other cases of like tenor and effect.

Lindsey Adams and the claimant, two Negroes, were cutting pulpwood on the Sullivan land. Adams, as a witness for the appellants, on cross-examination, testified that Mullins, in advance, determined that the Sullivan timber should be purchased, that he agreed to pay for the stumpage, and that he did so; that, when the timber was severed, it became partnership property; that Mullins, on Saturdays gave orders for the following week, directing how many loads of wood should be hauled, what kind of timber should be cut, whether pine or gum, and how to cut the same; that the timber could not have been sold to anyone other than Mullins; and that Mullins had complete control over their operations. He further testified that, on one occasion, he heard Mr. Burns, the insurance man, say that so much per cord was charged for workmen's compensation insurance. When he reported that Rucker had been hurt, Mullins replied that he had workmen's compensation coverage, that Rucker would be taken care of, and that he would get $25 per week. The evidence by Adams substantially cor-

roborated Rucker's version that he was an employee of the partnership.

William J. Burns, who had written the workmen's compensation policy on Mullins and Parker's pulpwood operations from November 1950 through November 1954, testified that the permium rate was based on the cordage of all pulpwood that was trucked in, and that the policy covered the personnel. The partnership made a monthly report of all pulpwood purchased and this amount afforded the basis for the premium charge. The premium paid by Mullins and Parker for this coverage during the 12-month period that Rucker was working aggregated $20,000.

It was stipulated that all wood sold to Mullins and Parker by Adams and Rucker was included in the total cordage on which the premium for workmen's compensation was figured, whether it came off of the Sullivan land or other places.

While Mullins testified that he had only five known employees, on questioning by the attorney-referee, he said that "* * * it was our thought and intention to cover ourselves in the event of exactly this. Whoever was adjudged by the courts as our employees, whether we ever knew them or not, we were going to be covered and we paid those premiums; * * * It was my intention to cover the men who were producing wood for me in a strict sense because I do buy timber. * * * for my sole protection in cases such as this one * * * here.'' He thought that the men, who were producing wood, were aware of the fact that they were covered by workmen's compensation. There was only one policy of insurance for that particular period and it was issued to his firm. The insurer made an audit once a year after the expiration of the policy, in this case, presumably following November 10, 1954. It not only did not refund any part of the premium paid, but voluntarily paid compensation thereafter for nearly three years.

■■ ■ The evidence on the issue as to whether the employer-employee relationship existed was in sharp dispute. However, there was substantial evidence that Rucker, in his work, was directed and controlled by the appellants. Kisner v. Jackson, 159 Miss. 424, 132 So. 90; Marter v. Cathey-Williford-Jones Lumber Company, 225 Miss. 118, 82 So. 2d 724; Wade v. Traxler Gravel Co., et al., 232 Miss. 592, 100 So. 2d 103, and authorities there cited. In addition, there were many admissions and avowals on the part of the appellants of the existence of the relationship of employer and employee; and coupled with this, they voluntarily paid compensation on that account for one hundred and seventy weeks. It is obvious that the triers of fact were well-warranted in finding that the relationship of employer and employee existed between the parties, even though it was sharply disputed by the appellants and was in conflict with their previous admissions and avowals. But sometimes what one does speaks so loud that others cannot hear what he says. The award of compensation was therefore proper.

■■■ Dr. George B. Purvis was of the opinion that the claimant reached maximum medical recovery on August 24, 1957. On the date of the hearing, February 4, 1958, Rucker testified that he had not done any work and could not do so unless he was sitting down. His wife testified that he had not been able to do any work. On May 29, 1958, when the attorney-referee rendered his opinion, he said "When all of the evidence is considered, I am of the opinion that claimant is permanently and totally disabled", and the order was for the payment of benefits for permanent and total disability. In other words, it appears that the claimant was totally disabled following the injury on June 17, 1954, and was totally disabled, in the attorney-referee's opinion, on May 29, 1958, almost four years after the injury. The putative temporary total disability "proved to be a permanent

total disability all of the time from the date of the injury'' to the present. Morgan v. Campbell Construction Co., 229 Miss. 289, 90 So. 2d 663. Manifestly the Commission was correct in its modification of the award by the attorney-referee.

It follows that the judgment of the circuit court must be affirmed on both direct and cross appeals.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.

### APPELLEE'S MOTION FOR ALLOWANCE OF ATTORNEYS' FEES

LEE, J.

When the controversy in this cause arose, the appellants had already paid to the appellee weekly installments of compensation in the aggregate sum of $4,250. Consequently the motion of the appellee for the allowance to his attorneys, R. L. Netterville and Frank Cowart, of one-third of all amounts collected as the result of this proceeding is sustained, said fee to be based on all installments now due and to become due in excess of the prior payment of $4,250, and to be computed in accordance with Section 6998-32, Code of 1942 Recompiled.

Motion for allowance of attorneys' fees sustained.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.