TURNER et al. *v.* TURNER et al.

No. 41828 May 29, 1961 130 So. 2d 871

*Dent, Ward, Martin & Terry,* Vicksburg, for appellants.

*B. D. Statham,* Magnolia, for appellees.

LEE, P. J.

Willie Turner and others, being five brothers and sisters or their heirs, filed their bill of complaint in the Chancery Court of Pike County against John Turner, their other brother, and others. Simply stated, the complainants alleged that they were the owners of 12.245/34 of all oil, gas and other minerals in and under the 34 acres of land, as described in the bill. They charged that John Turner, his grantees and assigns, were claiming this interest as a result of mistake, inadvertence, incorrect legal conclusions, and the fraud of John Turner. They accordingly sought to have themselves declared to

be the owners of such interest, and to have their title thereto quieted and confirmed as against the defendants.

The answers of the defendants denied the material allegations of the bill, and the cross bills, embraced therein, not only denied the allegations, but sought to have title to all oil, gas and other minerals in and under said land quieted and confirmed in them, their grantees, and assigns. They also set up a number of pleas by way of special defenses.

Cutting through the maze of elaborate pleadings, the decisive issue was whether the defendants' ownership of minerals in question extended over 34 acres or only 17 acres. The trial court awarded the relief prayed for by the complainants, and John Turner and his wife, Cassie, appealed.

The litigation arose in this way: William Turner died June 7, 1930. At the time of his death, he owned 120 acres of land in Pike County. He was survived by Leander Turner, his widow, and Willie Turner, Walter T. Turner, Rosco Turner, Rosie Lee Turner, Synovia Turner, and John Turner, sons and daughters.

While the bill charged that William Turner died intestate, and the answer of the defendants admitted the truthfulness of that allegation, yet John, Synovia, Walter T., Roscoe, and Willie—all of the children of the decedent living at the time of the trial—testified that their father willed the 120 acres of land to their mother, Leander. They said that the will disappeared after their fathers death. No effort had ever been made to prove the content and sufficiency thereof, or to establish and probate the same as the last will and testament of the decedent. Near the close of the case, the motion of the defendants to amend their answers so as to say that William Turner died testate was sustained. However the trial judge stated, in a memorandum, that he was unable to establish a will from what he had heard in evidence on the trial. Thus, in the absence of a will, it

followed that each of the seven named survivors, according to the laws of descent and distribution, actually inherited an undivided one-seventh interest in the 120 acre tract.

On April 12, 1938, Leander Turner, the widow, executed to B. C. Williams a deed to an undivided one-half interest in the oil, gas and other minerals under 80 acres of the land; and to Sam Letwin a like deed to an undivided one-half interest in the oil, gas and other minerals under the other 40 acres. Both of these deeds were duly recorded. Several of the children remembered the occasion, but, according to their testimony, their mother thought she was executing a mere lease.

John had loaned his father $350 to build the house in which the family lived. In addition, he paid off a deed of trust in the amount of $250, which his father had executed on the land and which remained unpaid at the time of his death. Besides he had also paid $90 on his father's burial expenses. There had never been any reimbursement to John on account of those payments.

On December 8, 1939, Leander executed six deeds by which she conveyed and warranted the 120 acres in separate portions to her six children, at the same time reserving a life estate in each parcel. The conveyances to Willie, Roscoe, Rosia Lee, and Synovia were each for 17 acres. The conveyance to Walter T. was for 17 acres, plus a loosely described one acre as a house site. The deed to John was for 34 acres with the loosely described one acre to Walter T. excepted. Obviously Leander had made this preference in favor of John because of the expenditures, described above. Minerals were not mentioned in these deeds.

On February 10, 1942, Leander died. The six children, heretofore named, were her sole heirs at law.

In 1948, when Roscoe attempted to borrow some money on his 17 acres, the defect in his title was discovered

because of the deed from his mother only and not from the other heirs also. In these circumstances, the six brothers and sisters engaged Hon. J. H. Price, Jr., an attorney of Magnolia, Mississippi, to prepare deeds so that each of them, by a deed from all of the others, would be vested with full title to his parcel of the land. To that end, the lawyer drafted the deeds, using the same descriptions that appeared in the deeds to the parties from their mother, Leander. In each instance, there were five grantors and one grantee, thus accounting for the interests of all of the six heirs. The deeds, warranting the title in each instance, were executed and acknowledged by the grantors on November 13, 1948, and, in due course, were filed for record. Minerals were not mentioned in those deeds of conveyances.

Following the execution and delivery of those deeds, thereafter, on December 22, 1948, Walter T. and Rosia Lee conveyed one-half of the minerals under their separately owned tracts of land to O. R. Meadows. But, upon examination of the title, the mineral conveyances of Leander Turner to B. C. Williams and Sam Letwin, heretofore mentioned, were found to be of record.

Thereafter these six Turner children employed the law firm of Roach and Jones to recover the minerals. On December 31, 1948, the attorneys filed a bill of complaint in the Chancery Court of Pike County in Cause No. 13,570, in the names of the six children by Roach and Jones as their attorneys. It was alleged that these six complainants were the legal and equitable owners of 120 acres of land, describing it according to governmental subdivisions, ''with each of the complainants owning a separate and distinct portion of said 120 acres as will be hereinafter shown''. Thereafter these separate and distinct portions were set out in the bill just as they had been described in the deeds from Leander Turner of December 8, 1939, and in the deeds to each other of November 13, 1948. The bill charged fraud on the part

of Williams and Letwin in procuring said deeds and sought the cancellation of those instruments. Alternatively, there was a prayer that, at all events, the defendants should be decreed to have acquired only a one-seventh interest inasmuch as that was the extent of Leander's part, and that the complainants should be declared as "the owner of the remaining six-sevenths interest" in the minerals. The lawyers for the complainants and the defendants tentatively agreed upon a compromise of the matter whereby the interest of the defendants was reduced to one-seventh of the minerals. On February 14, 1949, Attorney Jones wrote a letter to each of the six Turners apprising them that the case could be settled in that manner; that if this was done "each of you will then have a clear title to your minerals in the land"; that the parties would be able to deal with their minerals as they desired; and that, if they were willing to settle on those terms, they should come to his office and sign the deed to the attorneys for mineral acres in payment of the fee, in accordance with their agreement. Pursuant to that notice, the Turners went to the law office, signed the mineral deed for the fee, and authorized the settlement. Attorney Jones testified that "I knew each one (of the Turners) was going to end up according to my impression with only six-sevenths interest in the minerals in their respective deeds".

The decree, effectuating the settlement in that cause, was approved by the lawyers for the complainants and for the defendants and was signed by the Chancellor under date of March 14, 1949. It adjudicated that the defendants, Williams and Letwin, were the owners of an undivided one-seventh interest in the oil, gas and other minerals in and under the 120 acres, and, in addition, that "the remaining six-sevenths interest in all of the oil, gas and other minerals in, on and under said lands, is vested in the complainants on the basis of each of the complainants owning an undivided one-seventh

interest therein''. When Attorney Jones was asked whether he or Mr. Ward, counsel for the defendants, put the above language in the decree, he replied, ''I think I am the guilty party''. He also stated that the extent of the authority of his firm was to file suit to cancel the two outstanding mineral deeds to Williams and Letwin.

The record discloses that, from the date of the decree of March 14, 1949, until the filing of this lawsuit, almost ten years, these parties have executed instruments which affected the title to their lands and minerals in which they either used the same descriptions which were employed in the deeds of their mother, Leander, and their deeds to each other of date of December 8, 1939, and November 13, 1948, respectively, or such descriptions were embraced within the descriptions of those deeds. The number of instruments so executed were as follows: Willie Turner, 4; Walter T. Turner, 7; Rosia Lee Turner Allen and her heirs, 6; Rosco Turner, 5; Synovia Turner Sartin, 4; and John Turner, 2. Besides there was also introduced in evidence delay rental receipts for 9 years covering deposits made by Southern Natural Gas Company to Walter T. Turner and Rosia Lee Turner, as a result of their conveyances to O. R. Meadows, which passed to the Gas Company; a like delay rental receipt from Shell Oil Company to Synovia Turner Sartin, and one rental division order executed by her to Wm. B. Miller; and one delay rental receipt from Shell Oil Company to John and Cassie Lee Turner.

In their oral testimony, Synovia, Walter T., Rosco and Willie said that, when they made the deeds to each other, the understanding was that John was to get his part, namely 17 acres, and whatever Leander had. On the contrary, John testified that his mother and brothers and sisters, because of his payment of the obligations heretofore mentioned, agreed to give him twice as much

land as the others. For that reason, all of the heirs went to the office of Attorney Price, who fixed the deeds accordingly. The deeds included the minerals because at that time none of the parties had any idea that their mother had conveyed any part of the minerals.

In Osborne v. Thomas, 221 Miss. 682, 74 So. 2d 757, it was said: "There is a presumption against fraud, dishonesty, and bad motive, and evidence to overcome this presumption must be something more than a mere preponderance; it must be clear and convincing", citing Griffith's Chancery Practice, Par. 589. In Wall v. Wall, 177 Miss. 743, 171 So. 675, the opinion referred to the foregoing Par. 589 of Griffith's Chancery Practice which catalogues a number of cases, for a discussion of the necessary proof to establish fraud or mistake, and pointed out that, in order to reform the deed, it was necessary to show that the mistake was a mutual one and what the real agreement and understanding of each party was. See also Mayfield Motor Co. v. Parker, 222 Miss. 152, 75 So. 2d 435; Corley v. Myers, 198 Miss. 380, 22 So. 2d 234; Hunt v. Sherrill, 195 Miss. 688, 15 So. 2d 426; Martin v. Gill, 182 Miss. 810, 181 So. 849; Carter v. Eastman-Gardner Co., 95 Miss. 651, 48 So. 615.

There is no substantial evidence to show that John Turner practiced any fraud on his brothers and sisters. All of the parties were present at the time of the preparation and execution of the 1948 deeds. They had the benefit of good counsel and were fully apprised of the necessity for the action then being taken.

The contention of the appellees that a mutual mistake was made in the 1939 and 1948 deeds because John should have been charged with Lender's mineral conveyances in 1938 is wholly untenable. All of the parties testified that at the time of the execution of those deeds they did not know that Leander had executed those conveyances to Williams and Letwin. Besides there was no limitation whatever in the 1948 deeds. Nothing was said

about minerals. Consequently the whole interest in the land was conveyed. It is inconceivable that, at that time, there could have been an agreement between these brothers and sisters that John was to be charged with Leander's mineral conveyances when they did not know that such an instrument was in existence. Actually they did not even discover the fact of such a deed until shortly after Walter T. and Rosia Lee executed their mineral conveyances to Meadows on December 22, 1948.

The bill of complaint for the cancellation of the mineral deeds, written by the counsel of all of the Turners in accordance with their intention after being fully advised in the premises, alleged that the Turners were the owners of the separate and distinct portions of the 120 acres as described in the deeds of 1939 and 1948. The lawyer, who wrote the bill, thought that, if the case was settled in accordance with his recommendation, each one of the Turner heirs would own six-sevenths of the mineral interest in his respective deed, and that each one would have a clear title thereto. The case was compromised and settled in accordance with the recommendation of the attorney.

██ ██ To secure the reformation of an instrument, the proof must establish the mutual mistake beyond a reasonable doubt. Harrington v. Harrington, 2 How. 701; Watson v. Owen, 142 Miss. 676, 107 So. 865; Rogers v. Clayton, 149 Miss. 47, 115 So. 106; Frierson v. Sheppard, 201 Miss. 603, 29 So. 2d 726; J. J. Newman Lbr. Co. v. Robbins, 203 Miss. 304; 34 So. 2d 196. In Watson v. Owen, supra, it was said that the burden grows heavier with the lapse of time.

██ ██ When the Turners went to Hon. J. H. Price for the preparation of the deeds to cure the defect in the title, there was of course no thought of charging John with the unknown mineral conveyances that had been executed by Leander. When Roach and Jones prepared the bill for cancellation of the Williams and Let-

win deeds, it was not within the contemplation of the parties to divest the minerals out of the complainants in severalty and reinvest such in them as tenants in common. On the contrary, the specific allegation of the bill was that the complainants were the owners of lands as particularly described in the deeds of 1939 and 1948. Cocke v. Wilson, 161 Miss. 1, 134 So. 686, and Hurst v. Gulf States Creosoting Co., 163 Miss. 512, 141 So. 346, have recognized the authority of an attorney to consent to a decree against his client, if he acts in good faith and without fraud or collusion. This principle is conceded by the appellants. In Griffith's Miss. Chancery Practice, Sec. 617, page 663, it is pointed out that "in a suitable case it is permissible for the court to decree as between co-complainants even to the extent that relief may be awarded to one complainant against his co-complainant, as an incident of the main relief to the complainants against the defendants. *Such cases however are of rare occurrence,* and *the allowance* of the course mentioned *is only as to some subordinate issue or smaller concern in the case, but which nevertheless adheres in the very justice* of it: and even then, as in all other cases, *the pleadings must be appropriately framed so as to bring the matter within their scope,* or else they must be suitably amended or supplemented,—and *the complainant sought to be charged by any such amendment or supplement must have notice thereof the same as if he were a defendant. The court will not by this device attempt to adjust any independent controversy between the complainants with respect to the subject matter:* * * ." (Emphasis supplied.)

 In the cause which was filed December 31, 1948, to recover minerals, the divesting of minerals out of the complainants in severalty and the reinvesting of the same in them as tenants in common was not within the scope of the pleadings. Such a matter would have constituted an independent controversy, and would have

required notice to John in the same manner as if he had been a defendant in that cause. Since that question was neither litigated nor within the scope of the pleadings, it is clear that the decree of March 14, 1949, does not operate as an estoppel against the appellants. See Etheridge v. Webb, 210 Miss. 729, 50 So. 2d 603.

To the utter insufficiency of the evidence to sustain either fraud on the part of John or a mutual mistake of the parties, there must be added the construction which was placed by the parties on the meaning of their deeds. With the exception of the deed, which was executed to Roach and Jones for their fee, the parties, in dealing with their lands, did so in accordance with the descriptions in the deeds of 1939 and 1948 as set out in the decree of March 14, 1949. Those instruments, in considerable numbers have been referred to above.

In Mullins & Parker v. Rucker, 237 Miss. 330, 114 So. 2d 761, the evidence offered by the appellants during the trial was so inconsistent with what they had done prior to the trial that the court said: "But sometimes what one does speaks so loud that others cannot hear what he says." Truly the same observation is most applicable here. The manner in which the appellees dealt with their lands following the correction of the defect in the title and the suit to cancel the Williams and Letwin mineral deeds is wholly inconsistent with what they testified to in the trial of this case. Their actions have been completely at variance with what they testified to in this case. As to the effect of such actions by them in this particular, compare Koenig v. Calcote, 199 Miss. 435, 25 So. 2d 763; Brown v. King, 214 Miss. 437, 58 So. 2d 922.

The case of Oliver v. Board of Supervisors, 211 Miss. 447, 51 So. 2d 766, cited by appellees, does not constitute authority for reformation in the present case. The factual situations in the two cases are entirely different. Be-

sides Oliver was vigilant in seeking a reformation of his lease.

The conclusion is inescapable that there was not sufficient justification, either legal or factual, to award a reformation of the deeds, as prayed for by the appellees.

In view of what has been said, it follows that the decree of the learned trial court was manifestly wrong both as a matter of law and of fact. Consequently the same is reversed.

And, since it appears that the appellants John Turner and wife, Cassie, their grantees, and assigns are the legal and equitable owners of the oil, gas and other minerals in and under the property in Pike County, Mississippi, described as: Beginning at a point 350 feet North of the Southeast corner of the NE1/4 of the SE1/4 and running thence West 1320 feet; thence North 970 feet; thence East 1320 feet to the Section line; thence South 970 feet to the place of beginning, less one acre where W. T. Turner house is located; and also six acres on the South side of the SE1/4 of the NE1/4 and containing in all 34 acres more or less, Section 2, Township 4 North, Range 8 East, a decree will be entered here cancelling and annulling any claims which the appellees have asserted, or may assert, to said minerals, and quieting and confirming the title of the appellants thereto as against any such claims of the appellees. This decree constitutes neither a divestiture of "one acre where W. T. Turner house is located" out of John and Cassie Turner, nor an investiture thereof in Walter T. Turner. The sufficiency or insufficiency of that description was not challenged either by the pleadings or by the evidence.

Reversed and decree here for the appellants.

*Kyle, Arrington, Ethridge,* and *Rodgers, JJ.,* concur.