374 So.2d 794 (1979)
Dorothy J. PERRIEN
v.
Forrest E. MAPP and Jimmy Mapp.
No. 51304.
Supreme Court of Mississippi.
August 29, 1979.
*795 Lawrence C. Gunn, Jr., Kim T. Chaze, Hattiesburg, for appellant.
R.L. Calhoun, Hattiesburg, for appellees.
Before SMITH, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Dorothy J. Perrien filed suit in the Chancery Court of Forrest County, Mississippi, Honorable Michael Sullivan, presiding, against Forrest E. Mapp and Jimmy Mapp to remove cloud on her title, for possession and rents, a breach of warranty, slander of title and trespass, and for reformation of legal description to her property. The chancellor denied all relief prayed for, except that he reformed an error in the geographical description, which was agreed upon by the parties. The chancellor further established a line between the property of Mrs. Perrien and Jimmy Mapp. Mrs. Perrien has appealed and contends that the chancellor erred in declining to grant the relief prayed for.
In 1970, appellant and her husband were interested in buying certain property in the vicinity of McLaurin, Mississippi. She, her uncle, James Simmons, and Mrs. Bessie Mapp, one of the interested parties at the time, viewed the property sought to be purchased and Mrs. Mapp showed them the general vicinity where she thought was the south line of the property. The Mapps copied in handwriting the description of the *796 property, but declined to let appellant have the original deed. Appellant took the description furnished by the Mapps and obtained the services of an attorney to prepare an option covering same. After the instrument was drawn, Forrest E. Mapp, Bessie Mapp and Nollie Douglas Mapp executed the option along with appellant and her husband (Joseph M. Zeller). Appellant paid the sum of fifty dollars ($50.00) to the Mapps as consideration for the option. The description contained in the option follows:
Beginning at a point 50 feet East of the intersection of the centerline of the G. & S.I.RR. with the north line of Northwest quarter of Southeast quarter Section 5, Township 2 North, Range 12 West, and run east 210 feet, thence south 266 feet, thence west 210 feet, thence north back to the point of beginning; less and except 104 feet off of the south side thereof. (Emphasis added)
Subsequently, on September 16, 1970, Bessie Lou Mapp, Forrest E. Mapp and Nollie Douglas Mapp, conveyed the land by the identical description set forth in the option to Joseph M. Zeller and Dorothy Zeller (Perrien). After that conveyance, the disputed property herein, along with other property, was the subject of conveyances within the Mapp family.
The Mapps contend in this suit that a mutual mistake was made between appellant and them for the reason that the parties did not know the location of the south line of the property conveyed to appellant, and that it was not the intention to convey the disputed property, which was known as the old "Granny" Mapp place.
In 1972, the appellees began renovating a house on the 104-foot strip excepted from the appellant's deed, and, in the process of obtaining a loan, the title was examined by an attorney and the lines were surveyed. It was then discovered that ninety-one (91) feet of land had been conveyed to appellant, which the appellees claim they did not intend to convey. They wrote appellant and her husband, who were then in California, that a mistake had been made in the deed and that their attorney would forward a correction deed to them and they requested that the Zellers sign same. When the deed was received by appellant, it contained the original description to all property conveyed her in 1970, not just the disputed portion. The Zellers declined to sign the instrument.

I.
Was there a mutual mistake between the parties to the deed?
The evidence is conflicting as to what transpired at the time the property was viewed prior to execution of the option and deed. Appellees state that the line was pointed out to appellant as being just north of a place where a house trailer was sitting. Appellant testified that the general vicinity of the line shown to her was in the area of the true south line of her property. However, the terms of the deed and the description reflected therein are clear and unambiguous. The instrument specifically excepts only the south one hundred four (104) feet of the property described, thereby expressly conveying one hundred sixty-two (162) feet of land north and south. Appellant further testified that, when she examined the land description, prior to and at the time of execution of the option and deed of conveyance, she understood the amount of land contained in it, and she expected to receive 162 feet of property. There was no mistake insofar as she was concerned, even though the exact whereabouts of the south line was not known. That testimony of the appellant is uncontradicted.
The general rule is that a mutual mistake must be a mistake on the part of both parties or a mistake on the part of one party with fraud or inequitable conduct on the part of the other party. Johnson v. Consolidated American Life Insurance Company, 244 So.2d 400 (Miss. 1971). The burden of proof is upon the party trying to establish mutual mistake and the proof must establish such a mistake beyond a reasonable doubt. Turner v. Turner, 241 Miss. 444, 130 So.2d 871 (1961). See also Wall v. Wall, 177 Miss. 743, 171 So. 675 (1937).

*797 II.
Is appellant estopped to claim the disputed property?
The chancellor based his decision on the doctrine of equitable estoppel and found that appellant was estopped to claim the disputed property after the construction of a fence when a dispute arose over the location of the property line.
Testimony for the appellees was to the effect that in 1971, the Mapps desired to establish the line between them and appellant and they agreed with the husband of appellant that a line fence would be placed just north of the house trailer. Appellees testified that appellant's husband and son and Nollie Douglas Mapp and his son constructed a wooden fence along such line and that appellant's husband agreed with them that the fence constituted the line. Appellant denied that such occurred and claimed that even though the fence was placed as indicated, same was over her objection and contrary to her wishes.
The party attempting to defend on the doctrine of estoppel must show an actual fraudulent representation, concealment, and such conduct or negligence as will amount to a fraud in law, and that the party setting up such estoppel relied thereon and was actually misled thereby to his injury. 28 Am.Jur.2d Estoppel and Waiver § 81 (1966).
There is no evidence in the record that appellant acted fraudulently in the purchase of land from the Mapps. On the other hand, appellant's uncontradicted testimony was that she intended to buy 162 feet of land. She was entitled to rely upon the deed of conveyance which recited that such amount was being conveyed unto her. In Perkins v. Kerby, 308 So.2d 914 (Miss. 1975), this Court, discussing the doctrine of estoppel, said:
"Equitable estoppels have been and are the subject of many definitions. Their substance is the inducement of another to act to his prejudice. An estoppel by deed is depicted as a bar precluding a party from denying the truth of his deed. We stated in Cook v. Farley, 195 Miss. 638, 15 So.2d 352 (1943), that a distinct and precise assertion or admission of fact is necessary to constitute such an estoppel. Hence, an estoppel by deed or similar instrument was held to arise only where a party has conveyed a precise or definite legal estate or right by a solemn assurance that he will not be permitted to vary or deny.
Assuming the accuracy of the interlineation and estopping Perkins from varying or denying it, nevertheless, the fact remains that it was ineffective to convey title from either Mrs. Fannie Perkins or son to Mrs. Kerby since it clashes with Mississippi Code Annotated section 15-3-1 (1972), the statute of frauds. Neither do we think that an estoppel may be used to supply the legal requisites of a conveyance where they have been omitted. We find Florida Bank & Trust Co. v. Field, 157 Fla. 261, 25 So.2d 663 (1946), to be persuasive on this issue. It states:
`... [T]he general rule is that estoppel will not be invoked to effect a conveyance of real estate. Where the deed, contract or writing is insufficient to meet the lawful requirements for conveyances of land estoppel will not supply the legal deficiencies... . 157 Fla. at 266, 25 So.2d at 666.'"
308 So.2d at 916-917.
We hold that the doctrine of estoppel is not applicable here to permit appellees to acquire 91 feet of property conveyed to appellant [approximately one-half (1/2) of the land conveyed.]
Appellees argue that, since their evidence showed there was an agreement that the boundary line was to be established at the point where the fence was constructed, appellant is bound by such an agreement. First, there is no evidence that appellant ever entered into an agreement with the Mapps as to the establishment of such a boundary and construction of the fence. Second, as stated above, an oral boundary agreement, such as was testified to by the Mapps, is not sufficient under the facts here to establish a valid boundary line *798 agreement which would relieve appellant of 91 feet of land from 162 feet conveyed. We are of the opinion that there is no merit in that argument.

III.
Did the chancellor err in declining to allow rent, attorney's fees and damages to appellant?
Appellant and her husband were vested with title to the property involved here by deed from the Mapps dated October 9, 1970. This suit was begun by bill of complaint filed February 17, 1977. Without considering the question of laches, the record reflects that the claim of appellees did not arise through aggravation or malice. In fact, the chancellor decided all issues in favor of appellees, and such is indicative that their claim was a result of a bona fide belief that they were entitled to the disputed property. In 50 Am.Jur.2d Libel and Slander § 544, at 1063-1064 (1972) it is stated:
"It is firmly established that malice, express or implied, in the making of the slanderous statement is an essential ingredient of a cause of action for slander of title. Malice, within the meaning of this rule, is an intention to vex, injure, or annoy... .
... Thus, while the malicious filing of an instrument known to be inoperative constitutes slander of title, one who acts in good faith is not liable if he records title to land, or claims a lien on the wrong property... ."
And, in 50 Am.Jur.2d Libel and Slander § 546, at 1065 (1970), it is said:
"The rule is generally recognized that special damage is a necessary element of a cause of action for slander of title or disparagement of goods or property, and that the special damages recoverable must be such as proximately flow from the slander uttered. General damages are not presumed to result from the disparagement or defamation, and there can be no recovery if resultant injury is not shown."
We are of the opinion that this is not a proper case for imposition of rents, damages and attorney's fees and that the chancellor correctly disallowed same.
The judgment of the lower court is affirmed as to the denial of rent, attorney's fees and damages and in reforming the "Northwest quarter of Southeast quarter" to read "Northeast quarter of Southeast quarter." The judgment of the lower court is reversed and judgment entered here as to all other issues in the case.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.