KITCHENS, Justice,
concurring in part and dissenting in part:
-,¶54. I concur with the plurality that the chancellor.'did not err .in dismissing the Elchoses’ counterclaims, because I agree that the counterclaims are unsupported by the record. But I do not agree with the plurality that the chancellor applied the correct legal standard to his consideration of the Elchoses’ claim of mutual mistake, and I do not agree that the Elchoses’ affirmative defenses of estoppel and laches lacked evidentiary support. .1 therefore respectfully concur in part and dissent in part.
1. The chancery court applied an incorrect legal standard in its consideration of the Elchoses’ claim . of mutual mistake.
¶ 55. The Elchoses claim, on appeal that equity favors reformation of-the deed, since they and Kevin Haas were mutually mistaken with regard to the boundaries of the property to. be conveyed. The Haases urge that the Elchoses .are bound to -the property description in the contract of sale,, in the survey, and in the. deed, the position the pluralityadopts.. ¡
*1200 ¶ 56. This Court has held that, “[i]n an action to reform a deed based on a mistake theory, the petitioner must demonstrate a mutual mistake among the parties or a unilateral mistake in combination with fraud or inequitable conduct on the part of the benefitting party.” McCoy v. McCoy, 611 So.2d 957, 961 (Miss.1992) (citing Perrien v. Mapp, 374 So.2d 794, 796 (Miss.1979)). The .burden rests with the petitioner to “prove the mutual mistake occurred between the parties beyond a reasonable doubt.” Id. (citing Webb v. Brown, 404 So.2d 1029, 1032 (Miss.1981)). But this Court further has held in similar cases that “it is not the description (the parties] intended to write which controls, but the property the parties intended, to include in the description used.” Webb, 404 So.2d at 1031-32 (citing Brimm v. McGee, 119 Miss. 52, 57, 80 So. 379, 381 (1919) (“[i]t is not what description the parties intended to write but what property the parties intended to have embraced in the description they used.”) (emphasis added)).
¶ 57. The Brimm Court continued:
To hold that a court of equity could not ... correct mistakes for the reason alone that the parties used the terms they actually intended to use would be to curtail its powers to a hitherto unheard extent. Most mistakes of fact in conveyancing, except those caused by clerical misprision, arise in cases when descriptive terms are intentionally employed under the mistaken impression that they apply to the property sought to be conveyed.
Brimm, 80 So. at 381 (quoting Miles v. Miles, 84 Miss. 624, 37 So. 112 (1904)). The Court further held that, “(w]hen the mistake is admitted, then it is said there is no difficulty; then there is an equity de-hors the deed or instrument, and the power to relieve is said to be quite as clear when the mistake is shown' by proof either written or parol.” Brimm, 80 So. at 381 (quoting Simmons et al. v. North et al., 11 Miss. 67, 71 (1844)). In Smalley v. Rogers, this Court stated:
Of course, equity will not make contracts for parties.' “If an agreement is just what the parties intended it should be, no matter what led to it, there can be no interference with it; but if, in putting it into form, it fails to express and stipulate for what the parties understood and intended it should, a case is made for a court of chancery.”
Smalley v. Rogers, 232 Miss. 705, 712, 100 So.2d 118 (1958) (quoting Oliver v. Bd. of Supervisors, 211 Miss. 447, 51 So.2d 766, 769 (1951) (quoting Hall v. State, 69 Miss. 529, 13 So. 38, 39 (1891))).
¶ 58. This Court repeatedly has held “(fjindings of a chancellor will not be disturbed on review unless the chancellor was ‘manifestly wrong, clearly erroneous, or applied the wrong legal standard.’ ” Hotboxxx, LLC v. Gulfport, 154 So.3d 21, 24 (Miss.2015) (citations omitted) (emphasis added). The Hancock County Chancery Court ruled that “Mr. and Mrs. Elchos knew, or should have known, that they were building such 'structure partially on their property and partially on the Haas property_” On that basis, the chancellor granted the mandatory injunction sought by the Haases and ordered the Elchoses to remove their house from the Haases’ property. But, apart from dismissing the Elchoses’ counterclaims with prejudice, the chancellor altogether failed to analyze their request to have the property “re-surveyed and re-marked to allow [the Elchoses’] home to be located on the same size lot as the [Haases] intended to transfer.” Nor did he analyze the affirmative defense of mutual mistake pled by the Elchoses.
*1201 ¶ 59. The “knew or should have known” standard is not the correct standard in the context of reformation of a deed based on an allegation of mutual mistake. The plurality perpetuates this error. As noted above, however, equity contemplates a situation in which both parties are mistaken regarding a property description, even when the deed is clear and unambiguous; See Smalley, 100 So.2d at 120.
¶ 60. Here, the Elchoses placed their new house on land they believed they had purchased from Haas. The record reflects that Kevin Haas, too, believed that the Elchoses were building their house on the lot which he had conveyed to them;
Q: Did you ever go out on the ground and show my client where his lot ■ was located?-
A: No. I showed him about where it ■ was located.
Q: And after my client, we’ll just say, started with the foundation, up irntil you got a call regarding the Kleine-kordt dirt issue, during all of that time, you never raised any issue with Mr. Elchos regarding possibly being on your lot?
A: No, I did not.
Q: And did you believe his house was sitting on the lot you sold him?
A: Yes.
Q: Where his house is sitting, is that the lot you intended, to sell him?
A: It’s sitting on two lots.
(Emphasis added.) I agree with the El-choses that this statement provides evidence beyond a reasonable.doubt that both parties were mistaken about the location of the property. Thus, Haas’s own testimony supports that both parties to this contract were mistaken with regard to the exact location of the property conveyed by the Haases to the Elchoses. ’ ■
¶ 61. Additionally, Kelly King testified that, when he was in the process of staking the property prior to laying the Elchoses’ foundation, Kevin Haas showed King a “point of reference for elevation as to where we wanted to put the height of Mr. Elchos’ foundation- so he could -have a starting point to go up with his second floor.” Haas testified that, at that point, the foundation “was formed up” and that “I’m sure Kelly [had] put strings up there, but, I mean, I didn’t go-there to look for strings — ” When asked, whether Haas eyer had complained about the location of the property as staked out by King prior to or after the laying of the Elchoses’ foundation, King responded that “he didn’t say.” Indeed, Haas .himself testified: “I didn’t know [the Elchoses’ foundation] was on my property.” The record is clear, from the .testimony of Haas and others, that the Elchoses’- foundation placement did not cause Haas alarm; he believed the structure to be on land he had sold to them.
¶ 62. Even if the Elchoses were charged with constructive knowledge of the location of their property based on the deed and the survey, it appears here that all parties to the contract of sale in 2004 understood the land the Elchoses staked out'after the contract was signed constituted the subject matter of the contract. In these circumstances, because both parties were mistaken with respect to the location of the property, “an equity dehors the deed or instrument” arose, and reformation constituted the applicable remedy. Brimm, 80 So. at 381 (quoting Simmons, 11 Miss. at 71). Even if the" deed and survey provided a clear description of the property Conveyed, that' description does not control under the longstanding precedent of this Court if both parties are mistaken. See Webb, 404 So.2d at 1031-32 (citing Brimm, 80 So. at 381). Controlling the analysis- is- , the'intent of the parties: *1202 “what property the parties intended to have embraced in the description they used.” Brimm, 80 So. at 381. In such an instance, reformation is.^the appropriate remedy; “the deed should be reformed to coincide with the description of the property intended to be conveyed,” Webb, 404 So.2d 1029, 1032.
¶63.': The plurality says that “[t]he chancellor determined that the mistake was made by the Elchoses (unilaterally).” Plur. Op. ¶ 27: But the chancellor, whose sparse ruling' stated- only -that “Mr. and Mrs. Elehos knew or should have known ...,” did not, either in his bench ruling or in his written judgment, address' the El-choses’ affirmative defense of mutual mistake. With respect to the learned chancellor, his limited analysis leaves 'the plurality tó speculate regarding the impact upon the chancellor of the parties’ arguments and the testimony adduced before him. But the evidence in the record strongly supports the occurrence of a mutual mistake.
¶ 64. The “knew or should have known” inquiry is not applicable to the facts of this casé, and, in applying it, the chancellor erred as a matter of law. I would, therefore, reverse the decision of the chancellor and remand for the entry of a judgment reforming the Elchoses’ deed to include the property they intended to purchase and Haas intended to sell.
¶ 65. The Elchoses’ supplemental brief informed the Court that their house, which had been built, in part, on land belonging to the Haases,:has been moved, in accordance with the mandatory injunction of the Chancery Court of Hancock County, onto the land described in their deed. The Haases acknowledge in their supplemental brief that the Elchoses’ ■house “has been moved so that the same is now located 100% on the property purchased by. Mr. and Mrs. Elehos from Mr. and Mrs. Haas on May 18, 2004.” In spite of having. posted a supersedeas bond, the Elchoses did not request a stay pending appeal and it seems that the chancery court granted .their motions to allow additional time in which to move the house.- The Elchoses do not in the present matter seek damages for having been required to move their house wrongfully. Thus, the preceding opinion is. purely hypothetical. At this time, if the deed were to be reformed as I suggest it should be, the Elchoses’ house in its current location would be situated, in part, -on the Haases’ property. Nevertheless;' Í addressed the issue of reformation because I find that the Elchoses are entitled to attorneys’ fees and costs, as discussed below.
2. The record reflects that the doctrines of estoppel and laches , barred the Haases’ trespass claim.
If 66. The Elchoses assert on appeal, as they did in their answer, that the Haases’ claims are .barred by the equitable doctrines of estoppel and laches. The Haases respond that, since they did not know where the lot was located, “[tjhere is no showing that Mr. and Mrs. Elehos changed their position [in] reliance on .anything Haas did.”
¶67. “The defense of laches applies when one pai’ty neglects to assert a right or claim, and such neglect, when taken together with any lapses of time and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity.” Bailey v. Estate of Kemp, 955 So.2d 777, 784 (Miss.2007). The Court has articulated the standard for laches as follows:
There is no hard and fast rule as to what constitutes laches: If there has been unreasonable delay in asserting claims .or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers *1203 his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is’ asked. It would be contrary to equity and good conscience to enforce such rights when a defendant has been led to suppose by the word [or silence, or conduct] of the plaintiff that there was no objection to his operations.
Hans v. Hans, 482 So.2d 1117, 1120 (Miss.1986) (quoting Twin States Realty Co. v. Kilpatrick, 199 Miss. 546, 26 So.2d 356, 358 (1946)). Stated differently, “[t]he party seeking to invoke the doctrine of laches must show: (1) [the existence of a] delay in asserting a right or claim, (2) [that] the delay was not- excusable, and (3) [that] there was undue prejudice to the party against whom the claim [was] asserted.” Miss. Dep’t of Human Servs. v. Molden, 644 So.2d 1230, 1233 (Miss.1994) (citing Allen v. Mayer, 587 So.2d 255, 260 (Miss.1991)). “[T]he question of laches is addressed to the sound discretion of the chancellor and his decision will not be overturned on appeal except where there is an abuse of discretion.” Molden, 644 So.2d at 1233 (citing Morgan v. Morgan, 431 So.2d 1119, 1121 (Miss.1983)).
¶ 68. The present case is unlike Turner v. Morris, cited to this Court by the Haas-es and cited by the chancellor in his bench ruling, in which “the appellant [Turner] sought, but was denied in the Court below, an injunction directing the appellees [Morris and Hudson] to remove that part of their building covering this two by thirty foot strip of land owned by [Turner].” Turner v. Morris, 196 Miss. 297, 17 Sd.2d 205, 206 (1944). This Court reversed the judgment and remanded, holding that “the appellees must be charged with knowing that their deed gave them no right to encroach on the appellant’s land_" Id. at 207. But in that ease, this Court found lacking any proof of laches: the claim that the appellant frequently saw the construction “was denied by the appellant,” and even in the absence of the denial, “it falls short of proof that the appellant realized from what he saw when he was' at or passing this building that 'it was being constructed so as to encroach on his land.” Id. "
¶ 69. Here, the weekend following the closing, the Elchoses marked the property lines with T-posts and string, according to their testimony. King, who laid the foundation for the Elchoses’ home and who testified that he, too, had staked the property, testified that Haas had observed the placement of the foundation and the staked land surrounding it and. that Haas had made no complaints... Haas’s company assisted with the construction of a foundation for the Elchoses’ home.' Again, Haas said nothing. Haas attempted to straighten the Elchoses’ damaged home after Hurricane Katrina. Again,' he said nothing. Amid the Haases’ silence, the Elchoses built a large house on the property, then, with Haas’s ■ assistance, repaired it after Hurricane Katrina. Haas’s silent acquiescence to the Elchoses’ construction of a house on land which belonged, in part, to Haas, and now his assertion that the El-choses are trespassers -and should be forced to remove their home, were not excusable and constitute undue prejudice to the Elchoses.
¶-70. In the present case, ample evidence also supports a finding of estoppel. The. case of Martin v. Franklin, cited to this. Court by the Elchoses, demonstrates a situation similar to the present one. There, Franklin constructed his home on *1204 lands to which Martin later laid claim. Martin v. Franklin, 245 So.2d 602, 604 (Miss.1971). But, while all parties were present when the property was surveyed, Martin did not make.a claim to the disputed portion of the lot until Franklin’s home had been completed. Id. This Court found that, “[w]ith full knowledge of his own title to the land in dispute, Martin stood by and saw the survey being made of the Franklin lot and later the construction by Franklin of a home thereon.” Id. Because “Franklin acted in good faith believing he had title,” the Court found that “Martin was under a duty to make known to Franklin the true state of the title when Franklin began making improvements on the lot.” Id. As a result,- this Court affirmed the chancellor’s, cancellation of “Martin’s claim of title on the ground that Martin was estopped to assert his legal title.” Id.
¶71. It was‘dear to Haas where the Elchoses thought their property was, since, at their direction;, King had staked it out and laid the foundation. He knew where the actual property line was, since Fournet had marked the respective parcels according to instructions from Kevin Haas. The Haases’ assertion that Kevin Haas was unaware that the Elchoses were building on his land simply is belied by the record: Kevin Haas directed Fournet to place the property lines- in the manner which appeared on the survey. Even though he may not have known that .the Elchoses were building, in part, on his land, and he could have believed that the lot upon which they built was the lot he had sold them, Haas had a duty to make known to the Elchoses his claim of title, when the Elchoses began making significant improvements, as in Martin. Justice Coleman is correct that the landowner is charged with knowledge of his rights where he has “sufficient notice or means of knowledge.” Bright v. Michel, 242 Miss. 738, 137 So.2d 155, 159 (1962). Here, the evidence plainly demonstrates that the Haases1 should have known that the El-choses were building their house on- a piece of property, part of which was, in fact, owned by the Haases. The Haases, therefore, were estopped from claiming trespass.
¶ 72. Because the record before this Court demonstrates that the doctrines of estoppel and laches operated to bar the Haases’ claim of trespass against the El-choses, I would hold that the. chancellor abused his discretion in not so finding,
3. The chancery court erred, in awarding attorney’s fees to the Haases.
¶ 73. Both parties requested attorney’s fees at trial. The chancellor entered judgment in favor of the Haases for attorney’s fees amounting to $15,928.75. The Elchos-es assert on appeal that “Haas was awarded attorney’s fees and costs as a result of the very Covenants he provided to Elchos” and that the chancellor erred as a matter of law in granting the award.- The Haases claim that the award was warranted, since the Elchoses were guilty of “gross negligence” and they violated the protective covenants'in the deed.
¶ 74. “[T]he matter of determining.attorney’s fees. ... is largely entrusted to the discretion of the chancellor.” A.M.L. v. J.W.L., 98 So.3d 1001, 1022 (Miss.2012) (quoting O’Neill v. O’Neill, 501 So.2d 1117, 1119 (Miss.1987)). “The standard of review regarding attorneys’ fees is the abuse of discretion standard, and such awards must be supported by credible evidence.” Bailey v. Estate of Kemp, 955 So.2d 777, 787 (Miss.2007) (quoting Miss. Power & Light Co. v. Cook, 832 So.2d 474, 486 (Miss.2002)).
¶ 75. Because I would reverse the chancellor’s decision and remand for a reforma *1205 tion of the deed, I would vacate the chancellor’s award of attorney’s fees and costs to the Haases. * -
WALLER, C.J., AND KING, JOIN THIS OPINION.